## ``UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

LUMINATI NETWORKS LTD.

        Plaintiff,

     v.

IP NINJA LTD.

        Defendant.

Case No.

JURY TRIAL DEMANDED

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Luminati Networks Ltd. ("Luminati") brings this action under the patent laws of the United States, Title 35 of the United States Code, and makes the following allegations against IP Ninja Ltd. ("IP Ninja" or "Defendant"):

## THE PARTIES

1.      Plaintiff Luminati is an Israeli company having a principal place of business at 3 Hamahshev St., Netanya 42507, ISRAEL.

2.      Upon information and belief, Defendant IP Ninja is an Israeli corporation headquartered at BSR Tower #4, Floor 24, Metzada 7, Bney Brak, Israel.

## JURISDICTION AND VENUE

3.      This is an action for patent infringement under the patent laws of the United States of America, 35 U.S.C. § 1, *et seq.*

4.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

5.     This Court has personal jurisdiction over IP Ninja because it, directly or through its subsidiaries, divisions, groups, or distributors, has sufficient minimum contacts with this forum as a result of business conducted within the State of Texas, and/or pursuant to Fed. R. Civ. P. 4(k)(2). On information and belief, IP Ninja transacts substantial business in the State of Texas, directly or through agents, including: (i) at least some of the infringement alleged herein in the United States occurring in Texas, and (ii) regularly does or solicits business in Texas, engages in other persistent courses of conduct, maintains continuous and systematic contacts within this Judicial District, purposefully avails itself of the privilege of doing business in Texas, and/or derives substantial revenue from services provided in Texas. For example, on information and belief, IP Ninja utilizes software, which is, *inter alia*, the subject of the infringement alleged herein, that routes internet communications through user devices having IP addresses serving as residential proxies located in the State of Texas, as well as this Judicial District, permitting IP Ninja to include user devices in this Judicial District as part of IP Ninja's residential proxy service. This Court has at least specific personal jurisdiction over IP Ninja for all asserted claims.

6.     Following *Brunette Machine Works v. Kockum Industries, Inc.*, 406 U.S. 706 1972), venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b) at least because, upon information and belief, IP Ninja is a foreign entity.

## **FACTUAL ALLEGATIONS**

7.     Derry Shribman and Ofer Vilenski are the named inventors of a number of patents, including U.S. Patent Nos. 9,241,044 ("'044 Patent") and divisional 9,742,866 ("'866 Patent") (collectively the "Asserted Patents").

8.     The Asserted Patents are directed toward methods for fetching content over the Internet through the use of intermediary tunneling devices. Luminati identifies its patents on its

website at https://luminati.io/patent-marking#system-and-method-for-streaming-content-from-multiple-servers.

9.     The Asserted Patents were assigned to Hola Networks Ltd. ("Hola"). Hola has subsequently changed its name to Luminati Ltd., before changing its name to Luminati Networks Ltd., the Plaintiff in this action.

10.     Luminati, formerly known as Hola, provides a cloud service connecting tens of millions of devices over the Internet through a proxy-based network. Each participating device allows the network to utilize a small fraction of that device's idle time for the network. Luminati utilizes this network to provide proxy-based services to businesses.

11.     Since 2014, Luminati has offered proxy-based services relying on its "Residential Proxy Network" that practice one or more claims of the Asserted Patents. Luminati permits its business customers to utilize its residential proxy network to access data over the Internet using residential IP addresses from various localities as required by the customers. These residential IP addresses provide businesses with a number of advantages. For example, Luminati's customers may use this network to anonymously compare prices leading to more transparency and lower prices for consumers. Luminati's customers may also use residential proxy addresses to test their web sites from any city in the world. Prior to and separate from the technology at issue in this case, Hola provided a Virtual Private Network ("VPN") service called HolaVPN.

12.     Upon information and belief, IP Ninja has provided a residential proxy service, since at least May 2018 when Luminati became aware of it. On May 15, 2018, current Luminati Chief Executive Officer Or Lenchner sent a letter to Nadav Moshe, a partner at IP Ninja, notifying IP Ninja that Luminati is aware that Defendant is offering a residential proxy service, Luminati has intellectual property, including the '866 Patent, Luminati guards its intellectual property and

would be harmed by unauthorized activities covered by these patents, and Luminati is willing to discuss licensing.   On June 11, 2018, Mr. Lenchner had a meeting with Mr. Moshe and Idan Sharon, vice president of business development and sales at IP Ninja, at Luminati's office to discuss IP Ninja's residential proxy service.  In a subsequent email sent from Mr. Lenchner to Mr. Moshe and Mr. Sharon the next day, IP Ninja was provided with copies of the Asserted Patents. Upon information and belief, IP Ninja was aware of the Asserted Patents and Luminati's allegations of infringement at least as early as May 2018.

13.     Upon information and belief, IP Ninja offers residential IP proxy services, advertised as useful for price comparison, advertisement verification, brand protection, and geographic testing.  https://ipninja.io/.  Upon information and belief, this includes a residential proxy network with millions of residential IP addresses from more than 100 countries.  *Id*., https://ipninja.io/blogs/why-is-ip-ninja-the-best-residential-ip-proxy-service-provider/.     Upon information and belief, the IP addresses of these residential proxies are assigned by a standard Internet Service Provider (ISP) to a homeowner or other residential or mobile user. https://ipninja.io/blogs/residential-ip-proxies-vs-datacentre-proxies/.     Upon information and belief, this residential proxy network is used to access content over the Internet, wherein that content may be divided into portions, each of which includes part of the content and its own content identifier.  IP Ninja touts this service as permitting its customers to harvest data over the web via millions of IPs from all over the world touted as "real residential IPs."  https://ipninja.io/sdk.  IP Ninja also advertises this service as permitting its customers to select the proxy devices based on their location in specific countries, states and cities.  https://ipninja.io/blogs/mobile-ips-for-ad-verification/.  Upon information and belief, IP Ninja pays a premium to its development partners

for proxy devices located in the United States. https://ipninja.io/blogs/monetizing-desktop-software-and-uwp-apps-with-ip-ninjas-sdk/.

# About IP Ninja

IP Ninja is helping many kinds of businesses to collect quality and reliable data from all over the web by providing them innovative residential proxy services. Our clients are using us to test their ads, QA their websites, compare products and services prices and more. They can do all of that from any place in the world, using endless amount of real residential IP addresses to ensure the most accurate results.

https://ipninja.io/

## Popular uses of residential proxies



Prices Comparison



Ad verification



Brand Protection



Geo tests

https://ipninja.io/



## Geo tests

Testing anything from any place in the world

https://ipninja.io/



https://ipninja.io/

IP Ninja is already providing customers worldwide with cutting-edge residential IP proxy services—coupled with the best customer service in the industry. Its transparent pricing model charges customers by bandwidth and not per IP. This means that IP Ninja users need not ever worry about costly extras or add-ons; they will gain access to a wide variety of filters including geo-based IPs based on specific countries, states or cities.

With its revolutionary new service offering, IP Ninja plans to connect to about 850 million mobile IPs—a significant uptick versus competing services on the market, with the next closest competitor listing just 40 million IPs in *total* from a combination of Android devices and PCs.

Confident that 40 million IPs will be a thing of the past, IP Ninja is naming the groundbreaking offering the "1B Proxy"—in which the "1B" stands for "1 billion", the company's expected tally for its network of mobile and PC-based residential IPs. With an incredible number of residential IP proxy addresses changing on a daily basis, IP Ninja is poised to launch the most anonymous service offering on the market.

What's more, the 1B Proxy will be malleable and allow for a wide array of both technical and geographic filters including: network connectivity (3G/4G/WiFi), mobile carrier (ISP), operating system version, device type, country, and city.

https://ipninja.io/blogs/mobile-ips-for-ad-verification/

## Why IP Ninja is the Superior Choice

Many proxy services out there meet one or two needs, but you don't want (and can't afford) to mix and match services to meet all your requirements.

At IP Ninja, we check all the boxes for a one-stop quality residential IP proxy service. And here's how:

### Real Residential IPs

Unlike some of our competitors, we don't try to pass off poor substitutes as real residential IPs. The residential IPs we have on offer are verifiable residential IPs from around the world. All our IPs go through IPHub API for verification. You can even check them yourself at IPHub.info. We want our customers to know they're getting the real deal when they sign up with us.

We can offer residential IPs from over 100 countries worldwide. We're also committed to helping you find what you need. If you need an IP for a location we don't have, then we'll get it for you right away.

Our full range of IPs is available to all paying customers–we don't place any limits on location or number of IPs when you sign up for a plan.

https://ipninja.io/blogs/why-is-ip-ninja-the-best-residential-ip-proxy-service-provider/

## Why IP Ninja is the Superior Choice

Many proxy services out there meet one or two needs, but you don't want (and can't afford) to mix and match services to meet all your requirements.

At IP Ninja, we check all the boxes for a one-stop quality residential IP proxy service. And here's how:

### Real Residential IPs

Unlike some of our competitors, we don't try to pass off poor substitutes as real residential IPs. The residential IPs we have on offer are verifiable residential IPs from around the world. All our IPs go through IPHub API for verification. You can even check them yourself at IPHub.info. We want our customers to know they're getting the real deal when they sign up with us.

We can offer residential IPs from over 100 countries worldwide. We're also committed to helping you find what you need. If you need an IP for a location we don't have, then we'll get it for you right away.

Our full range of IPs is available to all paying customers–we don't place any limits on location or number of IPs when you sign up for a plan.

https://ipninja.io/blogs/why-is-ip-ninja-the-best-residential-ip-proxy-service-provider/

Upon information and belief, some of these user devices serving as residential proxies (and associated with respective IP addresses) are located in the Eastern District of Texas. Upon information and belief, on a given day a hundred or more user devices belonging to residents in the Eastern District of Texas are available for use as proxy devices for IP Ninja's residential proxy service.

14.     Upon information and belief, the residential proxy network used as part of the IP Ninja service is based upon numerous user devices, each of which is a client device identifiable over the Internet by an IP address. Upon information and belief, a server ("First Server") is operated by IP Ninja and/or a third party having a contractual obligation to IP Ninja to implement residential proxy network requests sent by IP Ninja. Upon information and belief, whether IP Ninja owns the First Server and/or contracts with a third-party to operate the First Server, IP Ninja directs and controls the First Server to implement the IP Ninja residential proxy service.

15.     Upon information and belief, software ("Server Software") is executed that implements the IP Ninja service.  Upon information and belief, IP Ninja directs and controls the operation of the Server Software to the extent that the Server Software implements the IP Ninja service. For example, upon information and belief, IP Ninja can direct and control the IP Ninja service to select residential proxy devices located within a specific country, state or city.

IP Ninja is already providing customers worldwide with cutting-edge residential IP proxy services—coupled with the best customer service in the industry. Its transparent pricing model charges customers by bandwidth and not per IP. This means that IP Ninja users need not ever worry about costly extras or add-ons; they will gain access to a wide variety of filters including geo-based IPs based on specific countries, states or cities.

With its revolutionary new service offering, IP Ninja plans to connect to about 850 million mobile IPs—a significant uptick versus competing services on the market, with the next closest competitor listing just 40 million IPs in *total* from a combination of Android devices and PCs.

Confident that 40 million IPs will be a thing of the past, IP Ninja is naming the groundbreaking offering the "1B Proxy"—in which the "1B" stands for "1 billion", the company's expected tally for its network of mobile and PC-based residential IPs. With an incredible number of residential IP proxy addresses changing on a daily basis, IP Ninja is poised to launch the most anonymous service offering on the market.

What's more, the 1B Proxy will be malleable and allow for a wide array of both technical and geographic filters including: network connectivity (3G/4G/WiFi), mobile carrier (ISP), operating system version, device type, country, and city.

https://ipninja.io/blogs/mobile-ips-for-ad-verification/

16.     Upon information and belief, each user device in the residential proxy network sends its respective identifier to the First Server, which stores these identifiers.  Upon information and belief, IP Ninja uses their own servers, but to the extent that IP Ninja has contractual relationship(s) with one or more third parties that provide server services, IP Ninja directs and/or controls these third-party servers to implement its residential proxy network for the IP Ninja service through the third-party servers and user devices included in the residential proxy network. Upon information and belief, as part of the IP Ninja service, IP Ninja provides a First Server, which

authenticates the user devices of IP Ninja customers and controls the access and operation of requests and responses through the one or more third-party proxy residential networks directed and controlled by IP Ninja, and is in continuous communication with the Server Software. Upon information and belief, IP Ninja's customers directly practice at least claim 81 of the '044 Patent and claim 15 of the '866 Patent by utilizing the IP Ninja's residential proxy service through their client devices. IP Ninja also directly practices these claims by implementing customer requests through its Server Software as part of its IP Ninja service. In addition, upon information and belief, as IP Ninja knew of the Asserted Patents and had notice that its residential proxy service infringed these patents, but continued to advertise IP Ninja's infringing features and enter into contracts with its customers to provide this service, and IP Ninja intended its customers to implement this infringing service.

## About **IP Ninja**

IP Ninja is helping many kinds of businesses to collect quality and reliable data from all over the web by providing them innovative residential proxy services. Our clients are using us to test their ads, QA their websites, compare products and services prices and more. They can do all of that from any place in the world, using endless amount of real residential IP addresses to ensure the most accurate results.

https://ipninja.io/



https://ipninja.io/

**Why IP Ninja is the Superior Choice**

Many proxy services out there meet one or two needs, but you don't want (and can't afford) to mix and match services to meet all your requirements.

At IP Ninja, we check all the boxes for a one-stop quality residential IP proxy service. And here's how:

**Real Residential IPs**

Unlike some of our competitors, we don't try to pass off poor substitutes as real residential IPs. The residential IPs we have on offer are verifiable residential IPs from around the world. All our IPs go through IPHub API for verification. You can even check them yourself at IPHub.info. We want our customers to know they're getting the real deal when they sign up with us.

We can offer residential IPs from over 100 countries worldwide. We're also committed to helping you find what you need. If you need an IP for a location we don't have, then we'll get it for you right away.

Our full range of IPs is available to all paying customers—we don't place any limits on location or number of IPs when you sign up for a plan.

https://ipninja.io/blogs/why-is-ip-ninja-the-best-residential-ip-proxy-service-provider/

17.    Upon information and belief, IP Ninja has developed and/or is developing the software to be used in the user devices as part of the IP Ninja service by integration with different third-party software applications, including at least Aydin Adventure Mobile Apps Love, Girly, Fun Stickers for Wapp WAStickerApps, Pasquale Piccolo Opus Player – WhatsApp Audio Search and Organize, and Sinemus Free Video Dowloader.

# Harness Revolutionary Monetization with IP Ninja's SDK

By now, it should be clear that our SDK can transform the way you monetize your app.

Increasing your revenue generation without damaging your user experience makes perfect business sense. You're offering greater flexibility to your users while simultaneously increasing your ROI. There's a good reason why many S&P 500 companies employ such services in their operations.

Ready to become our distribution partner? Contact us today.

Our rates by geo-location of the users:

Android:

US, UK – $0.03\month per user

All West Europe countries, KR, JP, IL, CA, AU, NZ – $0.025\month per user

Rest of world – $0.015\month per user

PC (Desktop & UWP apps and Chrome extensions):

US, UK, all West Europe countries, KR, JP, IL, CA, AU, NZ – $0.03\month per user

Rest of world – $0.02\month per user

https://ipninja.io/blogs/app-monetization-ip-ninja-sdk/

18.     Upon information and belief, a IP Ninja customer may utilize the IP Ninja residential proxy network by sending a request ("First Request") from the IP Ninja customer's device ("First Device"), to the above First Server, which responds by sending the IP address ("Second Identifier") corresponding to one of a group of client devices in the proxy network, any one of which may serve as a proxy device ("Second Device"), back to the First Device.

19.     Upon information and belief, having received the Second Identifier, the First Device may then send a request ("Second Request") to the Second Device for specific Internet data ("First Content") identified by an identifier ("Content Identifier") from a target server ("Second Server") identified by its own identifier ("Third Identifier"), which is forwarded by the Second Device to the Second Server.  Upon information and belief, the target Second Server

responds to the forwarded Second Request by sending the First Content to the Second Device, which is then forwarded back to the First Device.  Upon information and belief, to the extent that the requested content may be divided into portions or slices, the IP Ninja customer's device, which is a First Device, can construct the content from the plurality of Content Slices.  Upon information and belief, IP Ninja advertises the infringing IP Ninja service, including the specific use of proxy devices or proxy IPs with the intent that its customers will implement the IP Ninja service to operate as advertised.



https://ipninja.io/



https://ipninja.io/

20.     The use of the residential proxy network permits anonymity to IP Ninja customers, for example for engaging in activities such as web crawling without disclosing the customer's identity to the targeted web sites.

**COUNT I**
(Infringement of the '044 Patent)

21.     Luminati repeats and re-alleges the allegations contained in paragraphs 1-20 of this Complaint as if fully set forth herein.

22.     The '044 Patent entitled "System and Method for Improving Internet Communication by Using Intermediate Nodes" was duly and legally issued by the U.S. Patent and Trademark Office on January 19, 2016, from Application No. 14/468,836 filed on August 26,

2014, claiming priority to provisional applications 61/870,815 filed on August 28, 2013. A true and accurate copy of the '044 Patent is attached hereto as Exhibit A.

23.     Each and every claim of the '044 Patent is valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

24.     Luminati exclusively owns all rights, title, and interest in and to the '044 Patent and possesses the exclusive right of recovery, including the exclusive right to recover for past infringement.

25.     Claim 81 of the '044 Patent recites:

Claim 81. A method for fetching over the Internet a first content, identified by a first content identifier, by a first device, identified in the Internet by a first identifier, from a second server identified in the Internet by a third identifier via a second device identified in the Internet by a second identifier, using a first server, the method comprising the steps of:
(a) sending the first identifier to the first server;
(b) sending a first request to the first server;
(c) receiving the second identifier from the first server;
(d) sending a second request to the second device using the second identifier, the second request includes the first content identifier and the third identifier; and
(e) receiving the first content from the second device.

26.     As described above, upon information and belief, IP Ninja's proxy residential network used for the IP Ninja service comprises numerous devices each of which is identifiable by its own IP address ("identifier"), which are stored on servers through the execution of Server Software under the control and/or direction of IP Ninja. Consequently, IP Ninja's IP Ninja proxy residential network would comprise at least a First Device and a Second Device with their corresponding First Identifier and Second Identifier and a First Server.

27.     As described, upon information and belief, this network would permit a user to access Internet content ("First Content"), identifiable by a content identifier such as a URL ("First

Content Identifier") from a target server ("Second Server"), identifiable by its own corresponding IP address ("Third Identifier").

28.     As described, upon information and belief, the IP Ninja customer sends a request with its corresponding IP address to the "First Server." At least the IP Ninja customer device can serve as a "First Device" with the First Server storing the corresponding IP address ("First Identifier") of that "First Device."

29.     As described above, upon information and belief, an IP Ninja customer can utilize its device to send a request ("First Request"), with at least the IP Ninja customer device serving as the first device ("First Device"), to the First Server, causing the First Server to respond by sending the Second Identifier back to the First Device.  Upon information and belief, a second request ("Second Request"), comprising a First Content Identifier and a Third Identifier to the Second Device, is then sent from the First Device to the Second Server using the Second Identifier.  Upon information and belief, the Second Server responds by sending the requested First Content to the Second Device, which is forwarded back to the First Device.

30.     Upon information and belief, IP Ninja has had actual notice of the '044 Patent since at least June 12, 2018, and has known, including by way of communications before and since that date and this lawsuit, that implementation of its IP Ninja residential proxy service would infringe at least claim 81 of the '044 Patent. Despite this knowledge, IP Ninja has advertised these features of its IP Ninja residential proxy service and entered into service agreements with its customers with the intent that the customers would implement this service as described above.

31.     IP Ninja has been and is now directly infringing, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 81 of the '044 Patent, by implementing

its residential proxy service in the United States without authority and/or license from Luminati and is liable to Luminati under 35 U.S.C. § 271(a).

32.     IP Ninja has been and is now indirectly infringing, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 81 of the '044 Patent, by providing this residential proxy service to its customers knowing that the use of such service infringes these claims in the United States without authority and/or license from Luminati and is liable to Luminati under 35 U.S.C. § 271(b).

33.     As a result of IP Ninja's infringement of the '044 Patent, Luminati has suffered and continues to suffer damages. Thus, Luminati is entitled to recover from IP Ninja the damages Luminati sustained as a result of IP Ninja's wrongful and infringing acts in an amount no less than its lost profits and/or a reasonable royalty, together with interest and costs fixed by this Court under 35 U.S.C. § 284.

34.     Luminati has suffered damage because of the infringing activities of IP Ninja, its officers, agents, servants, employees, associates, partners, and other persons who are in active concert or participation therewith, and Luminati will continue to suffer irreparable harm for which there is no adequate remedy at law unless IP Ninja's infringing activities are preliminarily and permanently enjoined by this Court.

35.     IP Ninja's infringement of the '044 Patent was, is, and continues to be deliberate and willful because IP Ninja was and is on notice of the '044 Patent at least as early as June 12, 2018, yet it continued and continues to infringe the '044 Patent.

## COUNT II
### (Infringement of the '866 Patent)

36.     Luminati repeats and re-alleges the allegations contained in paragraphs 1-35 of this Complaint as if fully set forth herein.

37.     The '866 Patent entitled "System and Method for Improving Internet Communication by Using Intermediate Nodes" was duly and legally issued by the U.S. Patent and Trademark Office on August 22, 2017 from Application No. 14/930,894 filed on August 22, 2017, a divisional of Application No. 14/468,836 that issued as the '044 Patent, both of which claim priority to provisional applications 61/870,815 filed on August 28, 2013. A true and accurate copy of the '866 Patent is attached hereto as Exhibit B.

38.     Each and every claim of the '866 Patent is valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

39.     Luminati exclusively owns all rights, title, and interest in and to the '866 Patent and possesses the exclusive right of recovery, including the exclusive right to recover for past infringement.

40.     Claim 15 of the '866 Patent recites:

Claim 15. A method for fetching a content over the Internet from a first server identified in the Internet by a second identifier via a group of multiple devices, each identified in the Internet by an associated group device identifier, the method comprising the step of partitioning the content into a plurality of content slices, each content slice containing at least part of the content, and identified using a content slice identifier, and for each of the content slices, comprising the steps of:
(a) selecting a device from the group;
(b) sending over the Internet a first request to the selected device using the group device identifier of the selected device, the first request including the content slice identifier and the second identifier;
(c) in response to receiving the sent first request by the selected device, receiving over the Internet the content slice from the selected device; and
wherein the method further comprising the step of constructing the content from the received plurality of content slices, and
wherein each of the devices in the group is a client device.

41.     As described above, upon information and belief, IP Ninja's proxy residential network comprises numerous devices, each of which is a client device identifiable by its own identifier.  Upon information and belief, IP Ninja's proxy residential network permits IP Ninja's

customers to request content from the customer's device through the IP Ninja residential proxy service, which forwards such requests through a proxy residential user device ("Selected Device") to a target server ("First Server"), which is identifiable by its own IP address ("Second Identifier"). The Selected Device is selected from a group of client devices ("Group"), each of which has its own IP address ("Group Device Identifier").  As further described above, this content may be divided into portions ("Content Slices") identifiable by their own identifiers ("Content Slice Identifier").

42.    As described, upon information and belief, the IP Ninja service permits the IP Ninja customer to select a proxy user device from the Group and send a request ("First Request") over the Internet to the Selected Device using the selected device IP address ("Group Device Identifier of the Selected Device").  This First Request includes the Content Slice Identifier and Second Identifier.

43.    As described, upon information and belief, the above Selected Device responds to the First Request by sending the request to the First Server with the Content Slice Identifier.  The First Server responds by sending the requested Content Slice to the Selected Device, which forwards the Content Slice through the IP Ninja Gateway to the device of the IP Ninja customer, which is a client device.  The client device of the IP Ninja customer then constructs the content from the plurality of Content Slices.

44.    IP Ninja has had actual notice of the '866 Patent since at least May 2018, and has known, including by way of communications on and since that date and this lawsuit, that implementation of its IP Ninja residential proxy service would infringe at least claim 15 of the '866 Patent.  Despite this knowledge, IP Ninja has advertised these features of its IP Ninja

residential proxy service and entered into service agreements with its customers with the intent that the customers would implement this service as described above.

45.     IP Ninja has been and is now directly infringing, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 15 of the '866 Patent, by implementing its residential proxy service in the United States without authority and/or license from Luminati and is liable to Luminati under 35 U.S.C. § 271(a).

46.     IP Ninja has been and is now indirectly infringing, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 15 of the '866 Patent, by providing this residential proxy service to its customers knowing that the use of such service infringes these claims in the United States without authority and/or license from Luminati and is liable to Luminati under 35 U.S.C. § 271(b).

47.     As a result of IP Ninja's infringement of the '866 Patent, Luminati has suffered and continues to suffer damages. Thus, Luminati is entitled to recover from IP Ninja the damages Luminati sustained as a result of IP Ninja's wrongful and infringing acts in an amount no less than its lost profits and/or a reasonable royalty, together with interest and costs fixed by this Court under 35 U.S.C. § 284.

48.     Luminati has suffered damage because of the infringing activities of IP Ninja, its officers, agents, servants, employees, associates, partners, and other persons who are in active concert or participation therewith, and Luminati will continue to suffer irreparable harm for which there is no adequate remedy at law unless IP Ninja's infringing activities are preliminarily and permanently enjoined by this Court.

49.     IP Ninja's infringement of the '866 Patent was, is, and continues to be deliberate and wilfull because IP Ninja was and is on notice of the '866 Patent at least as early as May 2018, yet it continued and continues to infringe the '866 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Luminati respectfully requests that this Court enter:

A. A judgment that each of the Asserted Patents is valid and enforceable.

B. A judgment in favor of Luminati that the Defendant has and is infringing the Asserted Patents;

C. A judgment declaring Defendant's infringement to be willful.

D. A judgment declaring that this case is exceptional within the meaning of 35 U.S.C. § 285;

E. A permanent injunction enjoining Defendant, its officers, directors, agents, servants, employees, associates, partners, customers, server owners and/or operators, and other persons who are in active concert or participation with IP Ninja, from infringing the Asserted Patents and/or such other equitable relief the Court determines is warranted in this case;

F. A judgment and order requiring the Defendant to pay to Luminati its damages, enhanced damages, costs, expenses, prejudgment and post-judgment interest, and attorneys' fees, if applicable, for the Defendant's infringement of the Asserted Patents as provided under 35 U.S.C. §284 and/or §285, and an accounting of ongoing post-judgment infringement; and

G.  Any and all other relief, at law or in equity, that this Court deems just or proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Luminati hereby demands a trial by jury of all issues so triable.

Dated:  May 24, 2019

Respectfully submitted,

By: */s/ Korula T. Cherian__*
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ederieux@capshawlaw.com

Korula T. Cherian
RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA 94702
(510) 944-0190
Email: sunnyc@ruyakcherian.com

Attorneys for Plaintiff